Stone, J.
The power intrusted to the municipal corporations of this state, in respect to the laying off and establishment of streets and public grounds, was, by section 26 of the act of May 3, 1852, to provide for the-organization of cities and incorporated villages, conferred in these words: “ They shall have power to lay off, open, widen, straighten, extend, and establish . . streets, alleys, public grounds, wharves, landing-places, and market-spaces,” and “to. enter upon or take for such of the above purposes as may require it, land or material.’’ By a subsequent section of the statute, due compensation was required to be made for such private property as it. should be “ deemed necessary by any municipal corporation to enter upon or take” for any of the purposes named, and suitable provision was made for fixing the amount, and for' the payment of such compensation, in accordance with the requirements of the constitution.
These provisions have, in substance, been retained in the» *517 •subsequent amending and repealing acts, and in all have been applicable to all the cities and incorporated villages of the state.
In the exercise of the power thus conferred, the laying off and establishment, and the extension of streets across railroads, is frequently necessary, and is, we think, clearly authorized. In the actual circumstances of a large number of the cities and villages of the state, the power could otherwise be exercised to only a limited and partial extent, and could not be made available to meet the public necessities, and accomplish the object for which it was evidently conferred.
The power intrusted to the commissioners of counties, to lay off' and establish roads and highways, is granted in equally general terms, no special provision being made for crossing railroads. But it can not be doubted that the commissioners have that power. The extension of streets and of roads and highways across railroads is so evidently .a matter of public convenience and necessity, that it must be presumed to have been in the contemplation of the legislature when the statutes referred to were enacted. The terms of the grant are, in each case, sufficiently broad, prima facie, to confer the requisite authority, and there is in such case nothing in the nature of the use to which the land has been appropriated by the railroad company, or in that to which it is proposed to subject it by the second appropriation, which requires us, upon any presumed intention of the legislature, to ingraft upon the general terms of the grant an exception which will prohibit such crossing. The two uses are not necessarily inconsistent, and in all ordinary cases, at least, may well stand together.
As already indicated, it does not follow from these considerations that the authority in question must be held to extend to the taking of property however circumstanced, without regard to its effect upon the former use to which it may have been appropriated.
We do not doubt the power of the legislature to grant *518 such authority. Property appropriated to a particular public use is not thereby withdrawn from the liability to betaken for a different and inconsistent use, whenever, in the judgment of the legislature, the public exigency may require. The power of eminent domain is a prerogative of sovereignty. It is not exhausted by use, and can only be-limited by the public exigency upon which it is founded. Giesey v. Railroad Co., 4 Ohio St. 324. But where land is appropriated, pursuant to legislative authority, to an important public use, a subsequent grant can not be held to authorize the same land to be taken for a use wholly inconsistent with, and which, in the actual circumstances, must necessarily supersede the former use, unless such appear, by express words, or by necessary implication, to be the legislative intent. Boston Water Power Co. v. B. & W. R. R. Co., 23 Pick. 360.
The power conferred upon municipal corporations, in the-general language above quoted, to lay off and establish, streets, and to take therefor the necessary land, is necessarily subject to 'the limitation indicated. It can not, for instance, in my judgment, without doing violence to the-legislative intent, be held to authorize the taking of works-of public improvement constructed by the state, or pursuant to its authority, or to authorize land to be taken which is lawfully appropriated to public use, as the franchise of a railroad corporation, where such taking would defeat the-former use, and, in effect, annul the corporate franchise.
The present case, however, we are all of the opinion, is not one of this character. The issues upon which the case-was submitted to the court below, involved an examination of all the circumstances pertaining to the situation of the land-in question, the purposes to which it had been appropriated and was used by the plaintiffs, and the extent to which that use would be interfered with or impaired by the extension of the street as proposed by the city council. Upon such an examination the finding and judgment of that court were for' the defendant. The finding was, we think, warranted by the testimony. The witnesses examined upon the trial. *519 differed widely, in the opinions they expressed, as to the effect of the proposed improvement upon the business of the plaintiffs, and the extent to which it would interrupt or interfere with the present and prospective use by them of the property in question; but there was no substantial disagreement in relation to the facts upon which those opinions were based. The appropriation to be made by the city must necessarily be made subject to the public use to which the land may now be lawfully appropriated; and, upon'the whole case, it does not appear that the two uses are, in the actual circumstances, necessarily inconsistent, or that the-latter will defeat or unreasonably interfere with the former. By the extension of the street, the land is subjected to an additional use, but the former use is not superseded ; and, in so far as it is interfered with, the question becomes one simply of compensation.
This question is not now before us. The defendant, conceding that due compensation must be made, is here claiming the right to have such compensation assessed ; and the object of the plaintiffs’ suit in the court below was to enjoin proceedings which the defendant had instituted and was prosecuting for that purpose. The statute under which that proceeding was instituted makes provision for assessing compensanon in all cases where private property is taken for the uses named ; and it is evident that whatever claim to compensation the plaintiffs may be entitled to- assert, stands necessarily upon that ground.
The mere fact that the extension of the street, as proposed, will inconvenience the plaintiffs, or subject them to-additional expense in transacting their business and operating their road, constitutes no ground for the interference of a court of equity. The same results, to a greater or less extent, are produced wherever a railroad is crossed by a public street or highway. These are matters which it is clearly the duty of the city council to take into consideration in determining the necessity and expediency of the proposed improvement; but so long as their proceedings are regular, and they act from proper motives and within *520 the limits of their authority, the discretion confided to them in respect to the location and establishment of streets is not subject to judicial revision.

Judgment affirmed.